1  MAYER BROWN LLP
   JOHN NADOLENCO (SBN 181128)
2  jnadolenco@mayerbrown.com
   DOUGLAS A. SMITH (SBN 290598)
3  dougsmith@mayerbrown.com
   350 S. Grand Ave., 25th Floor
4  Los Angeles, CA 90071-1503
   Telephone: (213) 229-9500
5  Facsimile: (213) 625-0248

6  DAVID SIMON (*pro hac vice* to be filed)
   dsimon@mayerbrown.com
7  1999 K Street, NW
   Washington, DC 20006-1101
8  Telephone: (202) 263-3388
   Facsimile: (202) 264-3300

9
   Attorneys for Defendant,
10 LENG C. HAONG, D.D.S., INC.

11

12            **UNITED STATES DISTRICT COURT**

13           **EASTERN DISTRICT OF CALIFORNIA**

14                  **FRESNO DIVISION**

15

16 | ALICE ORTIZ, individually, and on behalf | Case No.: 1:22-at-00576
   | of all others similarly situated;
17 |                                          | **NOTICE OF REMOVAL**
   |            Plaintiffs,                    | **PURSUANT TO 28 U.S.C.**
18 |                                          | **§§ 1441(A) AND 1453 BY**
   |     v.                                   | **DEFENDANT LENG C. HAONG,**
19 |                                          | **D.D.S., INC.**
   | LENG C. HAONG, D.D.S., Inc. and DOES
20 | 1 through 100, inclusive,                 | [Removed from California Superior Court,
   |                                          | County of Stanislaus, Case No. CV-22-
21 |            Defendants.                    | 002756]

22

23

24

25

26

27

28

**TO THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HER COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT**, Defendant Leng C. Haong, D.D.S., Inc. ("Haong" or "Defendant") hereby removes *Ortiz v. Leng C. Haong, D.D.S, Inc.,* No. CV-22-002756, from the Superior Court of California, County of Stanislaus, to the United States District Court for the Eastern District of California pursuant to 28 U.S.C. § 1441(a) governing the removal of civil actions and § 1453 governing the removal of class actions. This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2)(a), as well as federal question jurisdiction under 28 U.S.C. § 1331 and corresponding supplemental jurisdiction under 28 U.S.C. § 1367(a). Pursuant to 28 U.S.C. § 1446(a), all process, pleadings, and orders served on Defendant in the action to date are attached as Exhibit 1 to the Declaration of Douglas A. Smith ("Smith Decl."), and Defendant provides the following "short and plain statement of the grounds for removal."[1]

## INTRODUCTION

1.      Plaintiff Alice Ortiz alleges that in April 2021, Defendant allegedly fell victim to a ransomware attack, which affected certain computer systems containing Personally Identifiable Information ("PII"), and Protected Health Information ("PHI"), as defined under the federal Health Insurance Portability and Accountability Act ("HIPAA") and 45 C.F.R. § 160.103. (Compl. ¶¶ 3, 5–8, 130.)

---

[1] As the Supreme Court has held, § 1446(a) requires only that Defendants plausibly allege the requirements for federal jurisdiction; Defendants "need not [offer] evidentiary submissions" with the notice of removal. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84 (2014). "Evidence establishing [jurisdiction] is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." *Id.* at 89; *accord Arias v. Residence Inn by Marriott*, 936 F.3d 920, 924–25 (9th Cir. 2019) ("[A] removing defendant's notice of removal 'need not contain evidentiary submissions' but only plausible allegations of the jurisdictional elements. . . . [E]vidence showing [that the jurisdictional requirements are met] is required 'only when the plaintiff contests, or the court questions, the defendant's allegation.'" (citations omitted)).

1

1
2    2.    On June 22, 2022, Plaintiff Alice Ortiz filed a putative class action against

Defendant in the Superior Court of the State of California, County of Stanislaus, alleging

3    harm from "[c]ybercriminals . . . access[ing] highly sensitive PHI/PII and financial

4    information." (Compl. ¶¶ 2, 9, 21, 33, 36.)

5    3.    Against Defendant, Plaintiff alleges four claims: (1) negligence, including

6    negligence per se based on violations of federal statutes (*i.e.*, HIPAA and Section 5 of the

7    FTC Act); (2) violations of the California Confidentiality of Medical Information Act

8    ("CCMIA"), Cal. Civ. Code §§ 56 to 56.37; (3) Breach of Implied Contract, and (4)

9    violations of the unlawful, unfair and fraudulent prongs of the California Unfair

10   Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 to 17210, including on the

11   basis that Defendant violated HIPAA (Compl. ¶¶ 85–136.)

12   4.    The purported class that Plaintiff seeks to represent is defined as:

13
     All individuals within the State of California whose PHI/PII and/or financial
14   information was stored by Defendants and was exposed to unauthorized third
     parties as a result of the data breach discovered by Defendants on April 24,
15   2021 (the "Class") (Compl. ¶ 25.)

16
17   5.    Among other remedies, Plaintiff, on behalf of herself and all members of the

18   Class, seeks an award of actual, statutory, nominal, and punitive damages, and attorneys'

19   fees and costs. (*See* Compl., Relief Sought ¶¶ 1–5.)

20   6.    The Court has jurisdiction over this action pursuant to the Class Action

21   Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2)(a). In addition, federal question

22   jurisdiction exists over Plaintiff's negligence and UCL claim under 28 U.S.C. § 1331

23   because those claims raise "significant federal issues," and corresponding supplemental

24   jurisdiction exists over Plaintiff's remaining claims under 28 U.S.C. § 1367 because those

25   claims purportedly arise from "part of the same case or controversy" as the claims raising

26   "significant federal issues."  Accordingly, this action may be properly removed to this

27   Court under 28 U.S.C. §§ 1441 and 1453 for multiple reasons.

28

2

## REMOVAL IS PROPER UNDER CAFA

7.    "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the  . . . defendant[], to the district court for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a); *see also id.* § 1453(b).

8.    CAFA vests district courts with original jurisdiction over putative class actions with 100 or more class members, where the aggregate amount in controversy exceeds $5 million exclusive of interest and costs, and where "any member of [the] class of plaintiffs is a citizen of a state different from any defendant." 28 U.S.C. § 1332(d)(1)–(2). This action satisfies each of CAFA's requirements.

9.    **Covered Class Action.** This action meets CAFA's definition of a class action, which is "any civil action" filed under a "State statute or rule of judicial procedure" that, "similar" to Federal Rule of Civil Procedure 23, authorizes "an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B); *see* 28 U.S.C. § 1453(a). Plaintiff seeks certification of a class under California Code of Civil Procedure § 382 (Compl. ¶ 29)—which is California's analogue to Federal Rule of Civil Procedure 23. *See Williams v. Superior Court*, 221 Cal. App. 4th 1353 (2013) (stating that California Code of Civil Procedure § 382 is analogous to Federal Rule of Civil Procedure 23(a)). Accordingly, Plaintiff filed a "class action" within the meaning of CAFA.

10.    **Class Action Consisting of More Than 100 Members.** Plaintiff seeks to represent a class of "[a]ll individuals within the State of California whose PHI/PII . . . was stored by Defendants and was exposed to unauthorized third parties[.]" (Compl. ¶ 25.) Plaintiff's complaint estimates that "tens of thousands" are in the class.  (Compl. ¶ 29, a.) Accordingly, by Plaintiff's own admission, there are at least 100 persons in the putative class, as required by 28 U.S.C. § 1332(d)(5)(B). *See Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1140 (9th Cir. 2013) ("Complaint . . . seeking to 'provide remedies for hundreds of affected consumers'" was sufficient to establish at least 100 class members.)

NOTICE OF REMOVAL; CASE NO. 1:22-AT-00576

1    11.    **The Parties Are Minimally Diverse.** CAFA requires minimal diversity—

2  which means that at least one putative class member must be "a citizen of a State different

3  from any defendant." 28 U.S.C. § 1332(d)(2)(A). A class member is any person "who

4  falls[] within the definition" of the proposed class. *Id.* § 1332(d)(1)(D). And corporations

5  are deemed to be citizens of the states where they are incorporated or organized, and where

6  they have their principal places of business. 28 U.S.C. § 1332(c)(1), (d)(10).

7    12.    Defendant is a California corporation with its principal place of business in

8  California. (Compl. ¶ 23.) Although Plaintiff, an individual, is a citizen of California,

9  minimal diversity exists because she seeks to represent a class of "[a]ll individuals *within*

10  the State of California whose PHI/PII and/or financial information was stored by

11  Defendants and was exposed to unauthorized third parties[.]" (Compl. ¶ 25 (emphasis

12  added).) As the Ninth Circuit has explained, "[t]hat a [person] may have a residential

13  address in California does not mean that person is a citizen of California." *King v. Great*

14  *Am. Chicken Corp, Inc.*, 903 F.3d 875, 879 (9th Cir. 2018) ("It cannot be assumed that all

15  residents of California are citizens of the United States."). In *King*, the Ninth Circuit noted

16  that at least one other potential class member permanently moved to Arizona, and it "seems

17  likely that at least some others in the group would have moved out of California as well."

18  *Id*. Further, the court recognized that potential class members may have been citizens of

19  other states, even if they had temporary residential addresses in California. *Id*.

20    13.    It is more than plausible that Plaintiff's proposed class includes citizens of

21  states other than California.   For example, a person could be "within California" and

22  receive dental care but yet be a non-California citizen, such as a college student. *See*

23  *Mondragon v. Cap. One Auto Fin.*, 736 F.3d 880, 881 (9th Cir. 2013) ("We imagine that

24  at least some purchasers who were California citizens at the time of purchase subsequently

25  moved to other states."); *Kanter v. Warner–Lambert Co.*, 265 F.3d 853, 857 (9th Cir.2001)

26  ("The natural person's state citizenship is then determined by her state of domicile, not her

27  state of residence.").   Furthermore, Plaintiffs' class definition sets no time period for when

28  a potential member of the class must be "within California" to qualify for membership.

The class therefore encompasses persons who might have received dental care from Defendant years ago while California citizens but who today are citizens of other states.

14.   Accordingly, minimal diversity exists because at least one putative class member is of a different state than Defendant's state of citizenship, California. *See* 28 U.S.C. § 1332(d)(2)(A).

15.   **The Amount In Controversy Exceeds $5 Million.** Under CAFA, the claims of class members are aggregated to determine if the amount in controversy exceeds the required "sum or value of $5,000,000, exclusive of interests and costs." 28 U.S.C. § 1332(d)(2), (d)(6). A "defendant's notice of removal need include only a *plausible allegation* that the amount in controversy exceeds the jurisdictional threshold" of $5 million. *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014) (emphasis added).

16.   Although Defendant denies all allegations of wrongdoing and states that Plaintiff's claims are meritless, Plaintiff's complaint seeks, among other things, compensatory, statutory, and punitive damages, attorneys' fees, and a laundry list of injunctive relief that leaves no question that the amount in controversy far exceeds $5 million.[2]

17.   Plaintiff alleges a class of "tens of thousands." (Compl. ¶ 29.) Given the number of potentially affected individuals, the amount of statutory damages Plaintiff has placed at issue independently satisfies the $5 million amount in controversy requirement. For example, the CMIA authorizes $1,000 in statutory damages per individual. Cal. Civ. Code § 56.36(b)(1). If the number of affected individuals totals at least 10,000, as Plaintiffs allege, the amount in controversy based on CMIA statutory damages *alone* would exceed

---

[2] *See generally Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 n.1 (9th Cir. 2015) ("Even when defendants have persuaded a court upon a CAFA removal that the amount in controversy exceeds $5 million, they are still free to challenge the actual amount of damages in subsequent proceedings and at trial. This is so because they are not stipulating to damages suffered, but only estimating the damages that are in controversy.").

$5 million ($1,000 x 10,000 = $10 million). And that is not even factoring in Plaintiff's request for punitive damages of $3,000 per affected California patient under the CMIA.[3]

18.    Further adding to the amount in controversy, the Court may consider that Plaintiff has requested attorneys' fees under California Civil Code § 56.35 of up to $1,000 per affected California class member (*See* Cal. Civ. Code § 56.35.)  Again, based on the minimum class size Plaintiffs allege (*i.e.*, 10,000), Plaintiffs are seeking $10 million in attorneys' fees (*see* Compl. ¶ 116), which *alone* would well exceed the $5 million threshold ($1,000 x 10,000  = $10 million). *See Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794 (9th Cir. 2018) (vacating a district court's remand order because "a court *must* include future attorneys' fees recoverable by statute . . . when assessing whether the amount-in-controversy requirement [under CAFA] is met." (emphasis added)).

19.    Even further adding to the amount in controversy is Plaintiff's requests for compensatory and consequential damages—some of which is intended to compensate class members for purported harm that "may continue for years" (Compl. ¶ 75.) On behalf of that putative class, Plaintiff seeks to recover compensatory and consequential damages for, among other things:

(i) the increased risk of fraud, identity theft, and misuse;

(ii) actual identity theft;

(iii) the loss of the opportunity of how their PHI/PII and financial

information is used;

(iv) the compromise, publication, and/or theft of Plaintiff and the Class

member's PHI/PII and financial information;

(v) out-of-pocket expenses associated with the prevention, detection, and

recovery from identity theft, tax fraud, or unauthorized use of their PII and

PHI;

(vi) lost opportunity costs associated with effort expended and the loss of

---

[3] Compl. ¶ 116; *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 772 (9th Cir. 2020) (allowing defendant to rely on potential punitive damages to satisfy CAFA's amount-in-controversy requirement).

6

1   productivity addressing and attempting to mitigate the actual and future

2   consequences of the data breach;

3   (vii) invasion of privacy;

4   (viii) loss of the confidentiality of the stolen confidential data;

5   (ix) deprivation of the value of Plaintiff and the Class' PII/PHI;

6   (x) financial and temporal cost of monitoring credit, financial accounts, and

7   mitigating damages; and

8   (xi) insufficient identity theft protection.

9   (Compl. ¶¶ 108–9, 125; Relief Sought ¶¶ 1–5.).

10  Even a conservative estimate suggests that these requested consequential and

11  compensatory damages could amount to hundreds of thousands of dollars.

12       20.    In addition, the Court may consider the value of Plaintiff's requested

13  injunctive relief. *See Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977)

14  ("In actions seeking declaratory or injunctive relief, it is well established that the amount

15  in controversy is measured by the value of the object of the litigation."). Plaintiff seeks

16  injunctive relief requiring, among other things, that Defendants (i) "protect, including

17  through encryption, all data collected through the course of their business," (ii) "implement

18  and maintain a comprehensive Information Security Program," (iii) "engage independent

19  third-party security auditors and internal personnel to run automated security monitoring,

20  simulated attacks, penetration tests and audits," (iv) "segment data by creating firewalls

21  and controls," (v) "conduct regular database scanning and securing checks," (vi) "establish

22  an information security training program that includes at least annual information security

23  training for all employees," (vii) "implement a system of tests to assess employees'

24  knowledge of the education programs," and (viii) "implement, maintain, review, and revise

25  as necessary a threat management program[.]" (Compl. Relief Sought ¶¶ 5, a–k.)

26  Implementing all of Plaintiff's requested injunctive relief—together with her request for

27  out-of-pocket expenses associated with the prevention, detection, and recovery from

28

1   identity theft, or unauthorized use of her and putative class members' PHI (*see* Compl.

2   ¶ 18–22)—would easily run in the millions.

3         21.    In sum, because the amount in controversy exceeds $5 million and all the other

4   factors for CAFA jurisdiction are met, this case "belongs in federal court." *See Lewis v.*

5   *Verizon Commc'ns, Inc.*, 627 F.3d 395, 399 (9th Cir.2010).

6   **FEDERAL QUESTION JURISDICTION**

7   **PROVIDES AN ADDITIONAL BASIS FOR REMOVAL**

8         22.    The Supreme Court has recognized that "in certain cases federal-question

9   jurisdiction will lie over state-law claims that implicate significant federal issues." *Grable*

10   *& Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). "The doctrine

11   captures the commonsense notion that a federal court ought to be able to hear claims

12   recognized under state law that nonetheless turn on substantial questions of federal law,

13   and thus justify resort to the experience, solicitude, and hope of uniformity that a federal

14   forum offers on federal issues." *Id.*

15         23.    Federal jurisdiction over a state-law claim will lie if a federal issue is: (1)

16   necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in

17   federal court without disrupting the federal-state balance approved by Congress. *Gunn v.*

18   *Minton*, 568 U.S. 251, 258 (2013).

19         24.    *First*, Plaintiff's negligence claim raises "significant federal issues" because

20   it expressly raises violations of Section 5 of the FTC Act, and therefore will require

21   significant construction and interpretation of a federal statute. (Compl. ¶¶ 112-16.) For

22   example, Plaintiff alleges that the "FTC publications and orders . . . form part of the basis

23   for Defendants' duty[.]") (Compl. ¶ 105.) According to Plaintiff, Defendant breached the

24   duty imposed by Section 5 of the FTC Act by "failing to use reasonable [security] measures

25   to protect [Plaintiff's and the Class members'] PII and PHI," which "violation of Section

26   5 of [the FTC Act]," Plaintiff contends, "constitutes negligence per se." (Compl. ¶¶ 106–

27   7.) Based on the foregoing allegations, Plaintiff's negligence claim will require the Court

28   to analyze the FTC's interpretation of "reasonable security measures," and whether

8

Defendant even owes a duty to Plaintiff under Section 5, given that it is subject to the federal Health Insurance Portability and Accountability Act ("HIPAA") that regulates PHI and mandates technical controls to protect it.[4] Because Plaintiff expressly alleges that Defendant should be liable to Plaintiff for purportedly violating Section 5 (Compl. ¶ 107), Plaintiff's negligence claim raises a "significant federal issue."

25.    Plaintiff's UCL claim similarly raises "significant federal issues." In analyzing whether federal question jurisdiction exists for a UCL claim, courts have treated each prong of the UCL as a separate claim. *See, e.g.*, *Rosenman v. Facebook Inc.*, 2021 WL 3829549, at *6 (N.D. Cal. Aug. 27, 2021) ("This Court thus exercises federal question jurisdiction over Plaintiff's UCL unfair prong claim. Additionally, this Court exercises supplemental jurisdiction over Plaintiff's claims under the fraudulent prong of the UCL . . . ."). Here, Plaintiff's alleged violation of the UCL's unlawful prong is predicated on violations of HIPAA's security requirements. (Compl. ¶ 130 ("Defendants . . . fail[ed] to comply with the legal mandates cited herein, including HIPAA.") Specifically, Plaintiff alleges that Defendant is a "covered entity" under HIPAA, and includes an entire section in her complaint that describes Defendant's "Obligation to Protect the Stolen Information" under HIPAA and discusses HIPAA at length. (Compl. ¶¶ 51–59.)

26.    Moreover, Plaintiff alleges, among other things, that Defendant's acts constituted an "unlawful and/or fraudulent business practice" by violating HIPAA—

---

[4] Defendant is a covered entity subject to HIPAA, which requires Defendant to have specific technical controls in place. *See* 45 C.F.R. § 164.312(a)-(c). PHI is statutorily defined as information that "[r]elates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual." *Id.* at § 160.103. Because HIPAA regulates the information and security requirements here, and because Plaintiff references PHI at various points in her complaint (*see* Compl. ¶¶ 1–6, 8–9, 16–22, 25, 27, 29, 31–32, 35–47, 50, 61–63, 66, 68–70, 72, 74–76, 83–84, 86–96, 99, 101–102, 105–108, 110, 113–114, 116, 118–122, 124, 130–31), the Court will need to resolve whether the FTC Act or HIPAA serve as the basis for Defendant's purported duty to Plaintiff, a purely federal question.

9

1    specifically, Plaintiff alleges that Defendant's violations include failing (i) "to maintain

2    adequate computer systems and data security practices" (ii) "to disclose that their computer

3    systems and data security practices were inadequate to safeguard and financial information

4    from theft" and (iii) "to timely and accurately disclose the Data Breach." *Id*. ¶ 130. And,

5    Plaintiff's UCL claim is also predicated on failing to "safeguard PHI"—that is, Protected

6    Health Information under HIPAA. *See* 45 C.F.R § 160.103.

7        27.    *Second*, the aforementioned federal issues are actually disputed because

8    Defendant denies all the claims asserted against it. *See Gunn*, 568 U.S. at 259 (holding that

9    the federal issue was actually disputed where the defendants denied the plaintiff's

10   allegations on the federal issue).

11       28.    *Third*, the federal issues raised in Plaintiff's complaint are substantial in the

12   sense that the issues are important to the "federal system as a whole." *Gunn*, 568 U.S. at

13   260. Plaintiff's negligence and UCL claims turn on whether Defendants violated Section 5

14   of the FTC Act, HIPAA, or both when they suffered a ransomware attack.  Ransomware

15   attacks that result in the acquisition of data protected under federal law (*i.e.*, "Protected

16   Health Information") and perpetrated by cybercriminals who operate across state borders

17   do not raise a state or local issue, but rather a federal one.  As President Biden's "Executive

18   Order on Improving the Nation's Cybersecurity" made clear, "remediation of cyber

19   incidents is a top priority [of the federal government] and essential to national and

20   economic security."[5]  Therefore, cases such as this one demand the uniformity federal law

21   would afford in determining what constitutes reasonable cybersecurity measures in the face

22   of malicious, persistent threat actors, which sometimes are backed by foreign nation states

23   attempting to conduct cyber espionage or cyberwar on this nation.  The federal interest in

24   enforcing cybersecurity measures in the context of ransomware attacks is therefore

25   unquestionably substantial. *See Rosenman*, 2021 WL 3829549, at *6.

26

27   _____

     [5] Executive Order on Improving the Nation's Cybersecurity (May 12, 2021),
     https://www.whitehouse.gov/briefing-room/presidential-actions/2021/05/12/executive-

28   order-on-improving-the-nations-cybersecurity/

NOTICE OF REMOVAL; CASE NO. 1:22-AT-00576

29.     *Fourth*, the federal issues are capable of resolution in federal court without disrupting the federal-state balance approved by Congress. This requirement focuses "principally on the nature of the claim, the traditional forum for such a claim, and the volume of cases that would be affected." *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 316 (2d Cir. 2016). Plaintiffs' UCL and negligence claims raise substantial federal questions, which are better adjudicated by federal, not California state, courts.  California state court is also not the "traditional forum" for Plaintiffs' negligence and UCL claims because these claims are not cognizable state law claims.  Neither Section 5 of the FTC Act nor HIPAA provides for a private right of action,[6] and were intended by Congress to be enforced exclusively by the FTC and Health and Human Services respectively[7]—which means that Plaintiff's negligence and UCL claims cannot be brought in any court, much less state court, since they turn on alleged violations of these federal statutes. As the California Supreme Court's reasoning in *Loeffler v. Target Corp.*, 58 Cal. 4th 1081 (2014), makes clear, it would be "inconsistent" to allow Plaintiff to assert a UCL unlawful prong claim predicated on an underlying violation of a federal statute, here HIPAA and Section 5, that Congress gave federal agencies exclusive authority to enforce, in part to ensure nationwide uniformity in application. *Logan v. Dep't of Veterans Affairs*, 357 F. Supp. 2d 149, 155 (D.D.C. 2004) (holding that HIPAA provides HHS the exclusive authority to enforce its provisions). Plaintiff's negligence and UCL claims therefore belong

---

[6] *See United States v. Streich*, 560 F.3d 926, 935 (9th Cir. 2009) ("HIPAA does not provide any private right of action."); *Carlson v. Coca-Cola Co.*, 483 F.2d 279, 281 (9th Cir. 1973) (holding that Section 5 of the FTC Act lacks a private right of action).

[7] *United States v. St. Regis Paper Co.*, 355 F.2d 688, 693 (2d Cir. 1966) (stating the Congress "granted the FTC exclusive authority to enforce the proscription against unfair methods of competition and deceptive acts or practices in commerce and, also, granted the FTC exclusive authority to issue orders to cease and desist from such practices."); *Logan v. Dep't of Veterans Affairs*, 357 F. Supp. 2d 149, 155 (D.D.C. 2004) (holding that HIPAA provides HHS the exclusive authority to enforce its provisions).

1    in this Court given the substantial federal issues they raise—because California law does
2    not provide a right of action in state court for them.

3        30.    Accordingly, the Court has federal question jurisdiction over Plaintiff's
4    negligence and UCL claims because they necessarily turn on disputed and substantial
5    questions of federal law important to the federal system, and because resolution of them in
6    federal court would not disrupt the federal-state balance. *See In re: National Football*
7    *League's Sunday Ticket Antitrust Litig.*, 2016 WL 1192642, at *4–6 (C.D. Cal. Mar. 28,
8    2016) (denying motion to remand because claims were federal in nature and relief
9    depended on the resolution of substantial questions of federal law); *California ex rel.*
10   *Lockyer v. Mirant Corp.*, 375 F.3d 831, 841–43 (9th Cir. 2004), *opinion amended on denial*
11   *of reh'g*, 387 F.3d 966 (9th Cir. 2004) (same); *Towne Auto Sales, LLC v. Tobsal Corp.*,
12   2017 WL 1738405, at *2 (N.D. Ohio May 4, 2017) ("[T]he Court determines that Counts
13   Four [and] Five . . . alleging Negligence [and] Negligence *per se* . . . are affirmatively
14   founded upon violations of the federal Bank Secrecy Act and the Patriot Act. These Counts
15   allege that the duty the Bank owed to Plaintiff arises out of the obligations imposed by
16   these federal laws . . . Therefore, the Court finds that removal under federal question
17   jurisdiction was appropriate."); *Central Valley Med. Grp., Inc. v. Independent Physician*
18   *Assoc. Med. Grp.*, 2019 WL 2491328, at *3 (E.D. Cal. June 14, 2019) (denying motion to
19   remand and concluding that UCL unfair prong claim necessarily raised a federal issue).[8]

20

21   [8] *See also Cordon v. Wachovia Mortg., a Div. of Wells Fargo Bank, N.A.*, 776 F. Supp. 2d
     1029, 1036 (N.D. Cal. 2011) ("Because the success or failure of Plaintiff's UCL claims is
22   contingent upon violations of federal law, the Court finds that subject matter jurisdiction
     is present with respect to the FAC."); *W. 14th St. Com. Corp. v. 5 W. 14th Owners Corp.*,
23   815 F.2d 188, 196 (2d Cir. 1987) ("In construing the [federal] Act in a state cause of action,
24   the federal issue is decisive because upon that Act's construction the vindication of rights
     and definition of relationships *created by federal law* depends."); *Landers v. Morgan Asset*
25   *Mgmt., Inc.*, 2009 WL 962689, at *11 (W.D. Tenn. Mar. 31, 2009) ("Plaintiffs' complaint
     does . . . raise disputed federal issues so substantial as to give rise to federal jurisdiction.
26   Plaintiffs are masters of their complaint, and their complaint raises disputed federal
27   questions as part of their negligence claim . . . ."); *Grodi v. Mandalay Resort Grp., Inc.*,
28   2003 WL 22244048, at *3 (N.D. Miss. Aug. 4, 2003) ("[T]he court finds that federal

31.     Because the Court has federal question jurisdiction over Plaintiff's negligence and UCL claims, it has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Plaintiff's remaining state-law causes of action (*i.e.*, breach of implied contract, CMIA, and a violation of the fraudulent prong of the UCL) because they arise from "the same case or controversy," namely the ransomware attack Defendant suffered. (*Compare* ¶¶ 85, 126, *with* ¶¶ 111, 117); *see, e.g., Rosenman*, 2021 WL 3829549, at *7 ("[T]his Court exercises supplemental jurisdiction over Plaintiff's claims under the fraudulent prong of the UCL and for unjust enrichment because these claims, which also concern [Defendant's] alleged conduct . . . arise from 'the same case or controversy' as Plaintiff's UCL unfair prong claim."); *Landers*, 2009 WL 962689, at *6, *11 ("The Court has supplemental jurisdiction over the remaining claims [which "do not raise substantial and disputed federal questions] under 28 U.S.C. §§ 1367 and 1441, because those claims arise from the same transaction or occurrence as [other counts, including for negligence].").

## COMPLIANCE WITH OTHER REMOVAL REQUIREMENTS

32.     **Removal Is Timely**. This Notice of Removal is timely because the Defendant filed it within 30 days of being served with the summons and initial complaint on June 28, 2022. *See* 28 U.S.C. § 1446(b)(1) (requiring, as relevant here, that a notice of removal of a civil action be filed within 30 days after the defendant receives, "through service or otherwise," a copy of the summons and complaint); *see also Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999).

33.     **Venue Is Proper**. Plaintiff filed this action in the Superior Court of the State of California, County of Stanislaus. Therefore, venue is proper in the United States District Court for the Eastern District of California, Fresno Division, because it is the "district and

---

subject matter jurisdiction exists pursuant to 28 U.S.C. § 1331. The Plaintiffs' negligence per se claim 'arises under' the laws of the United States . . . ."); *Citadel Secs. LLC v. Chi. Bd. Options Exch., Inc.,* 2017 WL 118419, at *5 (N.D. Ill. Jan. 12, 2017) (denying remand because "the court concludes that plaintiffs' claims, although couched in state law terms, arise under [a federal] Act and jurisdiction in federal court is proper").

13

1  division embracing the place where such action is pending." 28 U.S.C. § 1441(a); *see also*

2  *id.* § 84(c)(3).

3       34.     **Notice To Plaintiff And State Court**. Promptly after the filing of this Notice,

4  written notice of the filing will be given to Plaintiff, and a copy of the Notice, including

5  exhibits, will be filed in the Superior Court of the State of California, County of Stanislaus,

6  as required by 28 U.S.C. § 1446(d).

7  Dated: July 28, 2022                            Respectfully submitted,

8                                                  MAYER BROWN LLP

9

10                                                 By: */s/ John Nadolenco*
                                                       John Nadolenco

11                                                 Attorneys for Defendant
                                                   LENG C. HAONG, D.D.S., INC.
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                            14